UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRYSTAL G. O/B/O A.M.J.,

        Plaintiff,

v.                                                                        1:20-CV-129 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

## DECISION AND ORDER

Krystal G.[1] ("Krystal G.") brought this action under the Social Security Act ("the Act") on behalf of the claimant, A.M.J., a minor child under 18 years of age. She seeks a review of the determination by the Commissioner of Social Security (the "Commissioner") that A.M.J. was not disabled. Dkt. 1. Krystal G. moved for judgment on the pleadings. Dkt. 7. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 8. Krystal G. replied. Dkt. 9.

For the reasons below, this Court grants Krystal G.'s motion in part and denies the Commissioner's cross-motion in part.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On September 12, 2016, Krystal G. filed an application for Supplemental Security Income ("SSI") on behalf of A.M.J., alleging disability beginning January 13, 2015. Dkt. 7, at 1. Her claims were initially denied by the Social Security Administration on March 25, 2016. Tr. 15.[2] Krystal G. then filed a written request for a hearing on April 3, 2016, which took place via video before an Administrative Law Judge ("ALJ") on June 4, 2018. *Id.* The ALJ issued an unfavorable decision to Krystal G. on December 13, 2018, confirming that A.M.J. was not disabled. Dkt. 7, at 1. The Appeals Council denied Krystal G.'s request for review on December 6, 2019. *Id.* Krystal G. then commenced this action. *Id.*

## LEGAL STANDARDS

### I.  District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

---

[2] Dkt. 4 is the transcript of proceedings before the Social Security Administration. All references to Dkt. 4 are denoted "Tr. __."

Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   Disability Determination

A child under 18 is disabled under Section 1614(a)(3)(C)(i) of the Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c (3)(C)(i).

An ALJ follows a three-step evaluation to determine whether a child is entitled to SSI benefits:

1. First, the child must not be engaged in substantial gainful activity, defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b).
2. Second, the child must have a medically determinable impairment(s) that is severe — that is, it causes more than minimal functional limitations.
3. Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations.

*Encarnacion ex rel. George v. Astrue*, 568, F. 3d 72, 75 (2d Cir. 2009) (quoting 20 C.F.R. § 416.924).

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). The child's impairment is of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether limitations are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that

have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme."[3] *Id.* An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An "extreme" limitation is one that is "more than marked."[4] *Id.*

---

[3] On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(2)(i), § 416.926a(e)(2)(iii). For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations. *Id.* § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four months and last two weeks or more, or that occur more often than three times a year but last less than two weeks, or that occur less often but are of overall equivalent severity. *Id.*

[4] The ALJ will find that a limitation is "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(3)(iii). In the domain of "health and well-being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation. *Id.* § 416.926a(e)(3)(iv).

5

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed A.M.J.'s claims by applying the three-step process outlined above. The ALJ first determined that A.M.J. was born on February 26, 2005, and therefore was a school-aged child when the application was filed on January 15, 2016. Tr. 18. At step one, the ALJ found that A.M.J. had not engaged in substantial gainful activity since January 15, 2016. *Id.*

At step two, the ALJ determined that A.M.J. had the following severe impairments: "attention deficit hyperactivity disorder (ADHD) and a learning disability." *Id.* Although the ALJ found these impairments to be severe, at step three she determined that they did not meet or equal the severity of one of the Childhood Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19.

The ALJ determined that, while A.M.J. did exhibit some limitations in the areas described in listing section 112.11 (neurodevelopmental disorders for children ages 3 to the attainment of age 18), "her functioning [was] not impaired to a degree of severity that cause[d] her to medically meet or equal the listing criteria." *Id.* at 20. The ALJ did not explain why A.M.J.'s learning disability did not meet any of the Childhood Listings.

In addressing A.M.J.'s symptoms, the ALJ followed a two-step process to evaluate whether (1) there was an underlying medically determinable physical or mental impairment that could be expected to produce her symptoms, and (2) the intensity, persistence, and limiting effects of her symptoms interfered with her

functioning. *Id.* The ALJ determined that, while "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22.

As part of her analysis, the ALJ addressed A.M.J.'s abilities in each of the six domains. Tr. 24-32. For each determination in the domains the ALJ remarked that her findings were consistent with Dr. D. Bruno's consultative opinion. *Id.* In the first domain, acquiring and using information, the ALJ found A.M.J. to have a "less than marked" limitation. *Id.* at 24. In making this determination, the ALJ cited the hearing testimony of A.M.J. and Krystal G. and a report card exhibiting average or better grades. *Id.* The ALJ did also consider the teacher questionnaire, however she characterized it as "inconsistent" with the other evidence. *Id.* In the second domain, attending and completing tasks, the ALJ again found a "less than marked" limitation. *Id.* at 27. Again, the ALJ cited the claimant and her mother's testimony, along with the teacher questionnaire. *Id.* In the third domain, interacting and relating with others, the ALJ again found a "less than marked" limitation. *Id.* at 28. The ALJ cited the claimant and her mother's testimony and the teacher questionnaire. *Id.* Additionally, she cited to records regarding A.M.J.'s speech. *Id.*

In the fourth domain, moving and manipulating objects, the ALJ found no limitation. *Id.* at 29. In making this determination, the ALJ referenced records

7

related to A.M.J.'s physical capabilities, the teacher questionnaire, and hearing testimony from claimant and her mother. *Id.* In the fifth domain, caring for oneself, the ALJ found no limitation. *Id.* at 30. The ALJ referenced the consultative physician's opinions as well as hearing testimony and the teacher's questionnaire. *Id.* Finally, in the sixth domain, health and physical well-being, the ALJ found no limitation. *Id.* at 32. The ALJ referenced treatment records that indicated that A.M.J.'s condition improved with medication. *Id.* The ALJ also referenced hearing testimony and the teacher's evaluation. *Id.*

## II. Analysis

Krystal G. makes two main arguments. Dkt. 7, at 13. First, she asserts that the ALJ failed to develop the record when the record contained only stale opinions. *Id.* She argues that the record was devoid of treatment notes over a period of sixteen months while A.M.J. was being treated at Baker Victory Services ("Baker Victory"). *Id.* at 13. Further, Krystal G. argues that the ALJ erred by failing to request an opinion from A.M.J.'s treating psychiatrist at Baker Victory, Dr. Jennifer Haak, particularly when the ALJ relied only on consultative opinions. *Id.* at 13,15-16. Second, Krystal G. asserts that substantial evidence does not support the functional equivalence finding. *Id.* At 18.

For the reasons set forth below, Krystal G.'s first argument has merit and, as such, her motion is granted in part.

### A. The ALJ erred by failing to develop the record to include treatment notes and opinions from Baker Victory.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47). The Commissioner's own regulations reflect this duty, stating that "[b]efore [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical sources when [she] give[s] [the Commissioner] permission to request the reports." 20 C.F.R. § 404.1512(d)(1).

In her decision, the ALJ incorrectly assumes that the burden to develop the record rests solely with the claimant, particularly when he or she is represented by counsel. Tr. 16-17. The Second Circuit dictates that "[t]he ALJ has an obligation to

9

develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Perez*, 77 F.3d at 47. It is true that the claimant's counsel had an obligation to develop the record and may have been in a better position than the ALJ to do so. But that obligation is shared with the ALJ, and the ALJ may not delegate away her own duty to ensure the record is complete. *See Donohue o/b/o B.G. v. Comm'r of Soc. Sec.*, No. 18-CV-01412, 2020 WL 1530834, at *4 (W.D.N.Y. Mar. 31, 2020). *See also Claypool v. Berryhill*, Case No. 16-CV-6195-CJS, 2018 WL 3386337, *2 (W.D.N.Y. 2018) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 11874 (2d Cir. 1998)). When it is obvious on its face that the record is lacking, "the ALJ cannot be relieved of [her] affirmative obligation to develop the record by a statement of counsel." *Rodriguez v. Colvin*, No. 14-CV-214S, 2015 WL 5037014, at *4 (W.D.N.Y. Aug. 25, 2015) (quoting *Hilsdorf v. Comm'r of Social Sec.*, 724 F.Supp.2d 330, 346 (E.D.N.Y. 2010)). Here, the ALJ's failure to request those records constitutes remand. *Id.* Further, the ALJ has the power, *sua sponte*, to subpoena records "at his or her own initiative." Hearings, Appeals and Litigation Law Manual at 1–2–5–78(A). *See also* 20 C.F.R. §§ 404.950(d), 416.1450(d).

The Commissioner argues that, at the hearing, the claimant's counsel first failed to address the missing records from Baker Victory and second, advised the ALJ that no additional records were available. Dkt. 8, at 7. A review of the hearing transcript reveals that the claimant's counsel did in fact advise the ALJ that

10

records were missing, though from A.M.J.'s primary care physician. Tr. 16. Second, the ALJ herself acknowledged that "[t]he evidence is sparse in th[is] case," thus indicating that the record may need to be developed further. *Id.*

The period of consideration for the ALJ to determine disability was from January 15, 2016 to December 18, 2018, a period of approximately 3 years. Tr. 16.[5] A.M.J. was being treated by Dr. Haak at Baker Victory from December 5, 2016 through April 19, 2018, a period of approximately 16 months, which represents over a third of the period of consideration. Dkt. 7, at 15. A gap of 16 months without an opinion from Dr. Haak or treatment notes from Baker Victory, or any other mental health treatment facility for that matter, is significant, particularly when the period of consideration is only 3 years. *See Shaffer v. Berryhill*, No. 16-CV-874-FPG, 2017 WL 6047816 (W.D.N.Y. Dec. 7, 2017) (holding it was error for the ALJ not to consider a year's worth of psychiatric treatment records to the claimant's detriment). A gap of this length should have indicated to the ALJ that the record was lacking. *See Kirkland v. Astrue*, No. 06-CV-4861-ARR, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (remand for development of the record was appropriate where significant gaps in the record warranted further investigation) (citing *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)).

In addition, when a claimant alleges mental health issues, the SSA will "make every reasonable effort to obtain all relevant and available medical evidence

---

[5] The ALJ is permitted to consider records from at least 12 months preceding the month of filing. 20 C.F.R. § 404.1512(b). Even when this expanded period is considered, a 16-month gap is still quite significant.

11

about [the claimant]'s mental impairment(s), including its history, and any records of mental status examination, psychological testing, and hospitalizations and treatment." *Shaffer*, 2017 WL 6047816, at *3. *See* Listings § 12.00(D)(1)(a). The listings emphasize the "[n]eed for longitudinal evidence" and state that "it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish [the claimant's] impairment severity." *Id. See also* Listings § 12.00(D)(2).

### B. The Court declines to address the remaining arguments

In addition to the above, Krystal G. argues that the ALJ improperly discounted the February 2016 teacher questionnaire as stale, yet considered medical opinions from March 2016 not stale. Dkt. 7, at 14. She also argues that substantial evidence does not support the functional equivalence finding. *Id.* at 1. The Court declines to address these points and, instead, remands on the grounds stated above.

## CONCLUSION

For the reasons stated above, Krystal G.'s motion for judgment on the pleadings (Dkt. 9) is **GRANTED** in part, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. 10) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.

SO ORDERED.

Dated:   November 3, 2021
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

## CONCLUSION

For the reasons stated above, Krystal G.'s motion for judgment on the pleadings (Dkt. 9) is **GRANTED** in part, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. 10) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.

SO ORDERED.

Dated:   November 3, 2021
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE